# THE DISTRICT OF COLUMBIA *v.* LIBBEY.

---

# THE DISTRICT OF COLUMBIA *v.* BELT.

---

CRIMINAL LAW; VIOLATION OF MUNICIPAL ORDINANCE; OBSTRUC-
TIONS IN STREETS; VARIANCE; CERTIORARI; APPEAL.

1. The ordinance of the corporation of Washington of November 20,
   1862, providing a penalty for the unlawful occupation of any
   open space, public reservation, street, or any public grounds,
   by any private person, in so far as it applies to streets and
   avenues improved in whole or in part by the United States, is
   null and void, for the reason that Congress has, by the act of
   June 12, 1858, fully legislated on the subject and to the extent
   of such legislation withdrawn it from municipal control.
2. Where an information charges the defendant with the unlawful
   occupation of a park or parking, and the evidence for the pros-
   ecution shows that the space occupied is not a park but only a
   vacant space liable at some day at the will of the municipality
   to be converted into a park, the variance will be material; and
   it is proper for the trial court to direct an acquittal of the
   defendant.
3. Where the Police Court, by the filing of the information therein
   and the issue and service of process, has acquired jurisdiction
   of a case of which it has concurrent jurisdiction with the
   Supreme Court of the District, a writ of certiorari will not
   issue at the instance of the defendant to remove the case into
   the latter court for trial; *following* Hendley *v.* Clark, 8 App.
   D. C. 165.
4. In this case, however, inasmuch as no conviction can properly
   be had in the Police Court or elsewhere under the information,
   to reverse the judgment below and remand the case with
   directions to quash the writ of certiorari and remand the case
   to the Police Court would be a useless formality.
5. Whether an appeal lies on behalf of the District of Coumbia from
   a judgment of the court below in favor of the defendant in a
   prosecution by information for violation of a municipal ordi-
   nance, *quære.*

Nos. 586 and 587. Submitted October 6, 1896. Decided November 2, 1896.

HEARING on appeals by the District of Columbia from

judgments on verdicts directed by the court in prosecutions for alleged violations of a municipal ordinance. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Sidney T. Thomas,* Attorney for the District of Columbia, and *Mr. Andrew B. Duvall,* Assistant Attorney, for the appellant:

1. It was the duty of the court below to have directed a verdict against the appellees. There can be no doubt that the park spaces provided for by the act of Congress of 1870, are open spaces and public reservations within the meaning of the ordinance of the city of 1862. The judgment of the court proceeded on the idea that such spaces, not being in existence in 1862, at the time of the passage of the ordinance, were not contemplated by it. Aside from the question of the jurisdiction of the court below to issue the writ of *certiorari,* the principal, and, indeed, the only point for decision by this court is whether the court below was right in holding that the ordinance of the city of 1862 did not apply to the case of the appellees.

The street parking provided for by the act of Congress of 1870 is part of the public space, and is of the same genus or species as the open spaces and public reservations mentioned in the ordinance of the city of 1862. It is well settled that if the new thing or new offence is a species of a genus which was known to the common law, and which was the subject of former legislation, it may come within the punitive sanctions of the common law or former statute law. *Gambert* v. *Ball,* 108 E. C. L. 305; *Graves* v. *Ashford,* L. R. 2 C. P. 410; *Taylor* v. *Goodwin,* 4 Q. B. Div. 228; Endlich on Int. Stat., Secs. 112, 335; 23 Am. & Eng. Encyc. L., 380, and cases.

The act of the Legislative Assembly has no bearing upon the questions involved in this case, since there was no trespass by third persons upon the parking; neither could it

operate as a repeal by implication of the corporation ordinance, because it does not relate to the same subject-matter.

2. It was competent for the Police Court in the exercise of its jurisdiction to determine every point raised in these cases. The court below should have granted the motion of the District to quash in these cases. There can be no doubt that the Police Court had jurisdiction both over the offence and of the parties. *Deffer* v. *Kimball*, 7 App. D. C. 499.

The Police Court not only had jurisdiction of the offence charged, but, by act of Congress entitled "An act to define the jurisdiction of the Police Court in the District of Columbia," approved March 3, 1891 (26 Stat. 843), it had *original concurrent jurisdiction with the Supreme Court of the District of Columbia to try offences* "against the laws, ordinances, and regulations of the District of Columbia."

The opinion of this court, in *Hendley* v. *Clark*, 8 App. D. C. 165, delivered after the court below had overruled the motions to quash in these cases, would seem to be conclusive of the question. In that case the court said : "The use of a writ of *certiorari* for the purpose of transferring a case for trial from one court of concurrent jurisdiction, even though an inferior court, to another court of concurrent jurisdiction, even though it be a superior court and a court of general jurisdiction, when the jurisdiction has been declared by statute to be concurrent, we must regard as wholly unwarranted and unauthorized by law."

*Mr. W. F. Mattingly* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court :

These two cases were heard together on appeal, and the questions of law involved are the same in both.

By information filed in the Police Court of the District of Columbia by the attorney for the District, the appellees were prosecuted for the alleged unlawful occupation by them for their private purposes of certain public property, specified

in the information as being "the parking" on certain streets
and avenues of the City of Washington, in violation of a
certain alleged ordinance of the former corporation of said
city claimed to be yet in force as a legal enactment.

Thereupon the defendants, Frank Libbey, Benjamin
Miller, Francis A. Belt, and William H. Dyer, the appellees
here, filed their petition in the Supreme Court of the Dis-
trict of Columbia for a writ of *certiorari* to remove their
causes to said court for determination therein ; and the writ
was allowed. Trial of the issue was subsequently had in
the Supreme Court of the District sitting as a criminal court ;
and upon the evidence the jury, in pursuance of a peremp-
tory instruction from the court, rendered a verdict for the
defendants. Upon this there was judgment in their favor ;
and the District of Columbia appealed therefrom to this
court.

The ordinance of the corporation of the city of Washing-
ton under which it is sought to hold the appellees and
which is specifically stated in the information to be the one
violated by them, was enacted on November 22, 1862, and
provides as follows :

" No open space, public reservation, street, or any public
grounds in this city shall be occupied by any private person,
or for any private purpose whatever, under a penalty of not
more than fifty dollars nor less than twenty-five dollars per
day for every day or part of a day any such place shall be
occupied, to be collected as other fines, penalties and forfeit-
ures are collected for the use of the city."

This ordinance was passed some years before the so-called
Parking Act of Congress of April 6, 1870 (16 Stat. 82), was
enacted. This parking act was as follows :

" That the corporation of the city of Washington be, and
hereby is, authorized to set apart from time to time, as parks,
to be adorned with shade trees, walks, and inclosed with
curbstones, not exceeding one-half the width of any and all
avenues and streets in said city of Washington, leaving a

roadway of not less than thirty-five feet in width in the centre of said avenues and streets, or two such roadways on each side of the park in the centre of the same; and said corporation is hereby authorized and empowered to levy and collect special taxes in such just and equal manner as said corporation may determine, in particular wards, parts, or sections of the city, or upon all property bordering upon avenues, streets, and alleys, which shall have been so improved, sufficient in amount to pay the actual cost thereof: *Provided*, that nothing herein contained shall be held to apply to Pennsylvania, Louisiana and Indiana avenues, nor to Four-and-a-Half street between the city hall and Pennsylvania avenue : *And provided further*, that nothing in this act shall authorize the occupancy of any portion of the public streets or avenues for private purposes."

This act of Congress enters into the Revised Statutes of the United States for the District of Columbia as Section 225. In pursuance of it the municipal authorities of the District of Columbia, who succeeded to the rights of the corporation of Washington, have from time to time, in the improvement of the streets and avenues of the city, contracted the carriageway, extended the sidewalks beyond their former limits, and set apart certain portions of the sidewalks adjacent to the building line and extending therefrom to the inner edge of the new sidewalks for the parking purposes contemplated by the act of Congress. The purpose of the act of Congress, of course, was to beautify and ornament the city, while at the same time providing for a diminution of the cost of paving the roadways of the wide streets and avenues which had been planned on so generous a scale for the national capital. The parts of the highway intended to be set apart for the proposed parks were to be withdrawn in a great measure from the ordinary uses of a highway, to be enclosed with curbstones so as to exclude the public travel therefrom, and to be planted with flowers, grass and shrubbery. And it would seem that it

was contemplated that the work of ornamentation should be done, subject to the control of the municipal authorities, by the owners of adjacent property, who were given a certain charge of these parks or parking spaces and authorized to effect a certain enclosure of them by curbstones and iron railings.

Not all the streets and avenues of the city were affected at once by the action of the municipal authorities. Only from time to time, as the streets and avenues were improved, did the authorities undertake to set apart the parking spaces; and not even in all the improved streets have such spaces been set apart. Some streets have been deemed too narrow for parks; and in some, where parks had been set apart, the exigencies of business have occasioned their partial or total abolition and the extension of sidewalks back to the building line. In many cases, especially in those portions of the city devoted principally to the purposes of business rather than of residence, the municipal authorities have constructed sidewalks, leaving unimproved spaces between them and the building line, and apparently leaving it to the option of the adjacent owners whether they will improve these spaces and convert them into parks. And it would seem to be the fact that the work of actual parking is usually confined to the streets in front of residences, and that rarely or never is there any in front of property devoted exclusively to the purposes of business.

This latter is the condition of the parking spaces, so called, in front of the property occupied by the appellees. The appellees in both cases are dealers in lumber. Their property is used for lumber yards; and the gravamen of the offence with which they are charged is the storing by them of lumber for a longer or shorter period of time on the parking spaces in front of their premises. The question sought to be determined, therefore, is whether by such use of these parking spaces they are guilty of a violation of municipal ordinance.

The facts of the case are simple, clear and undisputed. It is conceded that the appellees occupy the public property in front of their premises with their lumber for periods of time beyond which the streets should not be obstructed with merchandise. And it is conceded that the portions of the streets and avenues so occupied by them have never been improved by paving, parking or otherwise in any manner. The contention of the District of Columbia is that these portions of the public property so occupied have been set apart for parking purposes; that the parks created by the act of Congress of April 6, 1870, are within the provisions of the municipal ordinance of 1862; and that therefore the appellees, by unlawfully occupying these spaces, are amenable to the penalties provided by that ordinance. On the other hand, the burden of the argument on behalf of the appellees is that the ordinance of 1862 was null and void, and never had any operative effect, on the ground that the corporation of Washington had no authority to enact it.

Under the conceded facts in this case, it is very clear that the appellees are unlawfully occupying a portion of the public property of the United States, and that they may be dispossessed by proper proceedings for that purpose. But whether they are guilty of a violation of a municipal ordinance, as they are charged, is a different question.

Is the municipal ordinance in question a valid enactment? Or was the corporation of Washington without authority to enact any such ordinance?

That the power vested in the corporation of Washington by the act of Congress of April 15, 1820 (3 Stat. 583), which created it, " to open and keep in repair streets, avenues, etc., agreeably to the plan of the city," and the authority given to the corporation by the amendatory act of May 17, 1848 (9 Stat. 223), " to take up and relay foot pavements and paved carriageways, and to keep them in repair," and " to make all necessary laws for the protection of public and private property," necessarily includes the power to keep

open and free from obstruction the streets and avenues so committed to its charge, and to protect all portions of the public highway from unlawful appropriation by private persons, is a proposition founded upon reason and amply supported by judicial decision. See Dillon on Municipal Corporations, Sec. 680 and notes, where the decisions upon the subject are collected. Consequently, if the ordinance of November 22, 1862, stood alone with the acts of incorporation of the city of Washington, there would seem to be no good reason to question the validity of that ordinance, so far as it concerned the care of the streets and avenues of the city. But that ordinance does not stand alone. On the contrary, it seems to be precluded by other and inconsistent legislation upon the same subject.

By an act of June 12, 1858 (11 Stat. 319, 326), it was provided by Congress "That it shall be the duty of the Commissioner of Public Buildings to cause obstructions of every kind to be removed from such streets, avenues and sidewalks in the city of Washington, as have been, or may be hereafter, improved in whole or in part by the United States, and to keep the same at all times free from obstructions; and for this purpose he shall have power to institute suits in any court having competent jurisdiction in the District of Columbia; and it shall be the duty of the District Attorney for said District to prosecute the same," etc. (Sec. 7); and also "that if any person shall place any obstruction on the streets, avenues, or sidewalks aforesaid, such person shall pay the cost of removing the same, and shall moreover be subject to a penalty of ten dollars, to be recovered as other debts are recovered in the District of Columbia, for each and every day the said obstruction may remain after the Commissioner shall have given notice for its removal" (Sec. 8).

These sections 7 and 8 of the act of Congress of June 12, 1858, were incorporated into the Revised Statutes of the

United States for the District of Columbia, as sections numbered from 226 to 230, both included, with the modification that the Chief of Engineers of the Army was substituted in the place of the Commissioner of Public Buildings as the officer charged with the duties thereby imposed, the position of the latter officer having in the meantime been abolished and his duties transferred to the Chief of Engineers by an act of Congress of March 2, 1867 (14 Stat. 457, 466).

It is conceded that the streets and avenues which the appellees are charged with obstructing were in part improved by the United States, and consequently are included among those committed by these enactments to the charge of the Chief of Engineers.

Again, by an act of Congress of June 30, 1864 (13 Stat. 412), incorporated into the Revised Statutes of the United States as section 1818, it was provided "that the Secretary of the Interior is directed to prevent the improper appropriation or occupation of any of the public streets, avenues, squares, or reservations in the city of Washington, belonging to the United States, and to reclaim the same if unlawfully appropriated."

The original of this enactment would seem from the context to have been passed for some special emergency. But the form in which it appears in the Revised Statutes makes its provisions permanent and of general application. It does not appear, however, that it was intended by this act to supersede or repeal the power vested in the Chief of Engineers by the other enactments that have been recited; and it is not necessary for our present purposes to determine how far these enactments are consistent with each other. Suffice it to say that it is very plain to us from their consideration that Congress intended thereby to exclude the corporation of Washington from the power of legislation over the matter of obstructions, such as are therein specified in such streets and avenues as were included within the purview of these enactments. By the act of June 12, 1858, Congress

itself had fully legislated upon this matter of obstructions in the streets designated, and had provided the penalty for causing such obstructions. It was not competent thereafter for the corporation of Washington, without special authority distinctly granted to it for the purpose to legislate upon the same precise subject and to provide a different penalty. Such legislation by the municipal authorities would be tantamount to an attempt by them to repeal the act of Congress; and, of course, no such power can be admitted for a moment.

We must hold, therefore, that inasmuch as Congress had fully legislated on the subject, and had to the extent of such legislation withdrawn it from municipal control, the corporation of Washington was without authority to enact the ordinance of November 22, 1862, so far as that ordinance applied to streets and avenues improved in whole or in part by the United States; and to that extent at least the ordinance is void. Nor can we countenance the proposition that any vitality was infused into it by the act of Congress of February 21, 1871 (16 Stat. 419—Rev. Stat. U. S. for D. C., Secs. 1 to 96), establishing a territorial form of government for the District of Columbia, which provided (Section 91) that all the laws and ordinances of the cities of Washington and Georgetown, &c., should remain in full force until repealed or modified. For this plainly means only such laws or ordinances as were valid and subsisting enactments at the time. It cannot be assumed that the statute intended to give validity to invalid laws and ordinances. Of course, we do not intend to assert that invalid municipal ordinances may not be validated by legislative enactment. What we mean to hold is that no such result is superinduced by a statute which purports merely to continue in force existing laws and ordinances.

The ordinance being void in its present application under which these prosecutions have been had, the prosecutions must fall with it.

But it may well be questioned whether, even if the ordinance were valid, the judgment of the court below in this case should be disturbed.   The appellees are charged in the information with the unlawful occupation of the " parking " on certain streets and avenues; and it appears conclusively, and is conceded, that there is no " parking " on those streets and avenues in front of the premises of the appellees, unless the spaces which might be set apart therefor can be regarded as the equivalent of such parking.

The power vested in the municipal authorities by the so-called Parking Act is one, by its express terms, to be exercised from time to time.   There is nothing in the records before us to show that they have in any manner exercised this power with reference to the streets and avenues or the portions of them occupied by the appellees, otherwise than as may be inferred from the fact that the paved sidewalk is some distance from the building line; and that the intervening space has been left unpaved.   But this space is not inclosed as contemplated by the Parking Act; and there is nothing to show when the pavement was laid, or whether it was laid with any purpose of the reservation of the residue of the street inside of the line for parking purposes.   The reasonable strictness required in criminal prosecutions—and the present is a criminal prosecution, although only for a misdemeanor—that the allegations and the proofs should conform to each other, would scarcely support an information for alleged unlawful occupation of a park or parking, when the fact is that there is no park, but only a vacant space liable some day at the will of the municipality to be converted into a park.   Whatever, therefore, may have been the offence of the appellees, the trial court was justified, under the facts disclosed in the record, in directing a verdict of acquittal on the charge of trespass on a park or parking.

It is argued, however, on behalf of the appellant, the District of Columbia, that, under the authority of the case of

*Hendley* v. *Clark*, 8 App. D. C. 165, the judgments of the Supreme Court of the District of Columbia in these cases should be reversed.   In that case we held, contrary to a growing practice in this District, that " the use of a writ of *certiorari* for the purpose of transferring a case for trial from one court of concurrent jurisdiction, even though an inferior court, to another court of concurrent jurisdiction, even though it be a superior court and a court of general jurisdiction, when the jurisdiction has been declared by statute to be concurrent, we must regard as wholly unwarranted and unauthorized by law ; " and we added that " the proper purpose of the writ of *certiorari* under the common law is merely to determine whether a court which seeks to proceed with a case has jurisdiction so to do."

Here the appellees were charged with the violation of a municipal ordinance.   Of such offences, concurrent jurisdiction is given by the statute (act of March 3, 1891, 26 Stat. 848) to the Supreme Court of the District of Columbia and the Police Court.   The latter tribunal had acquired jurisdiction in this case by the filing of the information therein and the issue and service of process ; and it was not competent to oust that jurisdiction by virtue of the writ of *certiorari* issued at the instance of the defendants and thereupon to proceed to a trial of the issue in the Supreme Court of the District of Columbia.   It is true that the petition for the issue of the writ alleges that the Police Court was without jurisdiction of the cause ; but it does not appear wherein the want of jurisdiction consisted.   The question of the validity of the ordinance of 1862 might have been made in the Police Court as well as in the Supreme Court of the District of Columbia.   And it would appear as if the right of the Supreme Court to proceed with the case had been sustained on the ground of the concurrent jurisdiction given by the act of March 3, 1891, which is one of the allegations of the petition.   The action of the Supreme Court of the District of Columbia in the premises was anterior to

the decision of this court in the case of *Hendley* v. *Clark*, and seems to have been in accordance with the then prevailing, but, as we think, erroneous custom.

The motion to quash the writ of *certiorari* made by the District of Columbia should have been granted, and the causes should have been remanded to the Police Court for trial.

But it does not follow in the present instance that for that reason the judgment now before us for review should be reversed, and the cause remanded with directions that it should be remitted to the Police Court for trial. That would be a useless formality in the present case, inasmuch as, from what we have already said, we are of opinion that no conviction of the appellees could properly be had in the Police Court, any more than elsewhere, under this information. The appellees have been properly acquitted; and they should not be held to answer further proceedings when the result of such proceedings should be a similar verdict of acquittal.

It is proper that we should not pass unnoticed a question which has not been argued either by the appellant or by the appellees, but which seems to us to be fairly raised by the record—the question of the right of the District of Columbia to bring this case here by appeal. In the case of the *United States* v. *Sanges*, 144 U. S. 310, which we had occasion to follow and apply in the case of *United States* v. *Ainsworth*, 3 App. D. C. 483, the doctrine is laid down broadly that in the absence of specific statute to authorize it, there is no right of appeal for the prosecution in criminal cases. The present is a criminal prosecution, even though it be only for a misdemeanor, the violation of a municipal ordinance; and there would seem to be reason to suppose that it falls within the rule announced in the case of *United States* v. *Sanges*.

But this point is unnecessary to decide here, and we are not to be understood as expressing any opinion in regard to

it. We note it merely for the purpose that our decision in the present case should not be drawn into a precedent in that regard.

From what we have said, it follows that the judgments of the Supreme Court of the District of Columbia in these several cases should be *affirmed.* *And it is so ordered.*