**MARYLAND & DISTRICT OF COLUMBIA RIFLE AND PISTOL ASSOCIATION, INC., Appellant,**

v.

**Walter E. WASHINGTON et al.**

**No. 22927.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1970.

Decided Feb. 24, 1971.

Mr. John T. Bonner, Washington, D. C., for appellant.

Mr. Richard W. Barton, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Hubert B. Pair, Acting Corporation Counsel at the time the brief was filed, and Leo N. Gorman, Asst. Corporation Counsel, were on the brief, for appellees.

Before McGOWAN, LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The sole question on this appeal is whether the District of Columbia Council had authority to promulgate the gun control code embodied in Articles 50 to 55 of the current District of Columbia Police Regulations.[1] Asserting the negative of the issue, appellant, a nonprofit corporation suing on behalf of itself and its members, sought from the District Court a judgment declaring that the challenged regulations were ultra vires. Taking the affirmative are the appellees, the Commissioner of the District of Columbia and the members of the Council, in whom the executive and regulatory powers of the District Government reside.[2] On cross-motions for summary judgment, the District Court upheld the regulations as action within the realm of the council.[3]

The regulations under review pursue a comprehensive scheme of control over firearms kept or traded within the Dis-trict. Briefly described, they require the registration of all pistols, rifles and shotguns possessed or transferred;[4] the licensing of persons purchasing, keeping or carrying such weapons,[5] and of dealers trafficking therein;[6] and the satisfaction of conditions imposed upon the sale of ammunition.[7] Some of the regulations are modeled after antecedent legislation for the District which, *inter alia*, bans the possession of pistols by certain persons and mandates licenses for others carrying pistols.[8] It is the Council's power to prescribe the rest of the regulations that the controversy centers upon.[9]

Appellees claim authorization by Section 1–227 of the District of Columbia Code, which empowers the Council[10] "to make and enforce all such usual and reasonable police regulations * * * as they may deem necessary for the regulation of firearms, projectiles, explosives, or weapons of any kind in the District of Columbia."[11] It was upon this sec-

1. D.C. Police Regulations, art. 50 to 55 (1969), hereinafter cited "Regulations." First issued on July 19, 1968, they were amended into their present form on January 30, 1969. See also note 9, *infra*.

2. Reorganization Plan No. 3 of 1967, 32 Fed.Reg. 11669 (1967), which transferred to the Council numerous regulatory and other functions formerly assigned to the Board of Commissioners, and to the Commissioner all other functions of the Board, including the executive power.

3. Maryland & D. C. Rifle & Pistol Ass'n v. Washington, 294 F.Supp. 1166 (1969).

4. Regulations, *supra* note 1, art. 51.

5. Regulations, *supra* note 1, art. 52.

6. Regulations, *supra* note 1, art. 54.

7. Regulations, *supra* note 1, art. 53.

8. Act of July 8, 1932, ch. 465, § 1–17, 47 Stat. 650–654, as amended now D.C.Code §§ 22–3201 to 22–3217 (1967), hereinafter more fully considered.

9. The precise question before us is narrow: the Council's power to promulgate regulations in the field of weapons control. We neither investigate nor decide whether particular provisions of the regulations in suit, as distinguished from the regulations as a whole, exceed the Council's authority or conflict with the 1932 statute, *supra* note 8. Issues of that sort were neither raised by the complaint nor presented to or passed on by the District Court; indeed, the litigation in that court was concluded before the regulations were extensively amended. See note 1, *supra*. Since the regulations were brand-new when the case was filed, the record before us is devoid of information depicting administrative interpretations, enforcement policies or the regulations in practical operation. At oral argument before us, the parties agreed that questions as to the validity of specific aspects of the regulations are not yet ripe for decision, and we think it clear that their resolution must await their presentation in concrete applications. We limit the scope of this review accordingly. *Cf.* Village of Euclid v. Amber Realty Co., 272 U.S. 365, 395–397, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

10. See note 2, *supra*.

11. "The Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such usual and reasonable police regulations, in addition to those already made under sections 1–224, 1–225 and 1–226 as they may deem necessary for the regulation

tion that the District Court rested its ruling sustaining the regulations.[12] Appellees contend alternatively that the requisite authority was conferred by Section 1-226 of the Code, which is a more general delegation of power to issue regulations deemed "necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia."[13] Appellant, on the other hand, argues that no authorization could be derived from either of the sections, and that Congress has reserved the field of weapons control solely to itself. We find, as did the District Court, ample warrant in Section 1-227 for adoption of the regulations, and thus have no occasion to consider the reach of Section 1-226.[14]

## I

As enacted, Section 1-227 was the fourth of six sections in the 1906 "Act To prohibit the killing of wild birds and wild animals in the District of Columbia."[15] Because the other five sections were concerned only with the protection of wildlife, appellant argues that Congress, by placing Section 4 in this context, intended that the power it conferred to regulate firearms was to be exercised only in relation to the hunting of wildlife. In our view, however, both

the language of the statute and its subsequent treatment by Congress negate such a restricted interpretation.

The first and perhaps most important indication of congressional intent springs from the words in which the statute is cast. They are comprehensive and unequivocal; they contain no limiting reference to wildlife. They commission "all * * * usual and reasonable police regulations * * * necessary for the regulation of firearms, projectiles, explosives, or weapons of any kind in the District of Columbia."[16] Absent strong reason for a contrary reading, our function is to take this language for what it plainly says, for "[t]here is * * * no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."[17]

We realize, of course, that "courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, * * * or would thwart the obvious purpose of the statute * * *."[18] But we recognize, on the other hand, that "courts are not free to reject that meaning where no such consequences follow and where * * * it appears to be consonant with the purposes of the [a]ct

of firearms, projectiles, explosives, or weapons of any kind in the District of Columbia." D.C.Code § 1-227 (1967).

12. Maryland & D. C. Rifle & Pistol Ass'n. v. Washington, *supra* note 3, 294 F.Supp. at 1167.

13. "The Commissioners of the District of Columbia are hereby authorized and empowered to make and enforce all such reasonable and usual police regulations in addittion to those already made under sections 1-224, 1-225, as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia." D.C.Code § 1-226 (1967).

14. The congressional prerogative to delegate to the District authority to make local police regulations is beyond question. District of Columbia v. John R.

Thompson Co., 346 U.S. 100, 106–110, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953) ; Jones v. District of Columbia, 116 U.S.App. D.C. 301, 305, 323 F.2d 306, 310 (1963) ; LaForest v. Board of Comm'rs, 67 App. D.C. 396, 397–398, 92 F.2d 547, 548–549, cert. denied, 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588 (1937).

15. Act of June 30, 1906, ch. 3932, §§ 1–6, 34 Stat. 808. The other five sections of the act were repealed in 1958. See note 34, *infra*, and accompanying text.

16. See note 11, *supra*.

17. United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

18. Helvering v. Hammel, 311 U.S. 504, 510–511, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941) (citations omitted).

as declared by Congress and plainly disclosed by its structure."[19] Nothing we discern in the case at bar persuades us to mistrust the ordinary meaning of the statutory language as the key to legislative intent.

Close adherence to normal usage of the statutory words is especially important where, as here, a contrary approach would narrow the operation of a statute written in general and expansive terms.[20] An intention to whittle down a law broadly written is hardly to be inferred where a natural construction is neither ludicrous nor obviously contrary to the statutory objective.[21] We perceive no absurdity in a grant of authority to the District to regulate firearms for the protection of its people as well as its wildlife. And the legislative history of the 1906 act, from the fourth section of which Section 1–227 emanated, does not disclose a congressional purpose to confine it to wildlife conservation exclusively. On the contrary, it furnishes positive evidence that a wider goal was set for the act as a whole.

The bill which became the 1906 statute was prepared by the District Commissioners and introduced at their request.[22] The report of the House Committee on the District of Columbia, which its counterpart in the Senate adopted in toto,[23] included a letter from the president of the Board of Commissioners listing among three specified objects of the legislation "the discharge of firearms."[24] The Committee, supporting its recommendation for passage of the bill, pointed out that "the advantage to be gained in the freedom from accident from indiscriminate discharge of firearms within the territory of the District of Columbia will safeguard human life and property to a large degree, which is now impossible." [25] Of the six provisions of the 1906 act, only Section 4—now Section 1–227—could have served the additional purpose of sparing the District's citizenry as well as its wildlife. Manifestly, the wider aim for the statute as a whole could be realized only by assigning the wider function to Section 4.

An expanded mission for Section 1–227 is also indicated by its cross-reference to other legislation enabling the District Government to regulate comprehensively for the protection of person and property. Like its forerunner, Section 4 of the 1906 act, but unlike any other provision of the act, Section 1–227 in terms supplements Sections 1–224 and 1–226.[26] Section 1–224 confers municipal authority over eight variegated areas; Section 1–226, also supplementing Section 1–224, broadly authorizes police regulations for the protection of life, health and property.[27] Neither of the latter two sections reflects a congressional inclination to confine the granted powers within limits narrower than those naturally connoted by the authorized topic of regulation. Section 1–

---

19. Helvering v. Hammel, *supra* note 18, 311 U.S. at 511, 61 S.Ct. at 371. See also United States v. American Trucking Ass'ns, *supra* note 17, 310 U.S. at 543–544, 60 S.Ct. 1059.

20. *E. g.*, Dameron v. Brodhead, 345 U.S. 322, 325–326, 73 S.Ct. 721, 97 L.Ed. 1041 (1953).

21. *Id.* See also Helvering v. Hammel, *supra* note 18, 311 U.S. at 510–511, 61 S.Ct. 368. And "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." Barr v. United States, 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765 (1945) (citations omitted). See also Browder v. United States, 312 U.S. 335, 339, 61 S.Ct. 599, 85 L.Ed. 862 (1941) ; Burge v. Commissioner of Internal Revenue, 253 F.2d 765, 769 (5th Cir. 1958).

22. S.Rep.No.4338, 59th Cong., 1st Sess. 3 (1906) ; H.R.Rep.No.4207, 59th Cong., 1st Sess. 4 (1906).

23. S.Rep.No.4338, 59th Cong., 1st Sess. 1 (1906).

24. H.R.Rep.No.4207, 59th Cong., 1st Sess. 4 (1906).

25. *Id.*

26. See note 11, *supra.*

27. See note 13, *supra.*

227 thus joins Sections 1–224 and 1–226, and many others as well,[28] in the vast network of the District Government's regulatory powers. On the other hand, the remaining sections of the 1906 act have nothing to do with the scheme of municipal government; they relate only to wildlife preservation.[29]

We are mindful that in 1906 the general public would have gained some measure of personal protection merely from the regulation of firearms in the hands of those who hunted wildlife, but we think Congress, in writing Section 4 into the 1906 act, had considerably more in mind. The dangers Congress wished to avert could not, even in 1906, be attributed to hunting alone, and we are unwilling to assume that legislators sensitive to the problem sought only an incomplete solution. This, we are convinced, is the more unlikely when we again consult the language by which Congress chose to express the delegation of regulatory authority. Not only, as we have said, was the grant broad and unambiguous,[30] but it went beyond the exigencies of controlling firearms use by hunters. The delegated power was for regulation not only "of firearms" and "projectiles," but more importantly of "explosives" and "weapons of any kind."[31] These words unquestionably embrace more than the hunters usual paraphernalia.

■ Moreover, the subsequent congressional treatment of Section 1–227 further strengthens the propriety of the more extensive role it was destined to play. In 1932, Congress enacted a limited gun control law for the District,[32] repealing its own 1892 enactment on the subject[33] but leaving Section 1–227 untouched.[34] Again, in 1958, in the course of passing a new wildlife statute for the Nation as a whole, Congress repealed Sections 1, 2, 3 and 5 of the 1906 act but left section 4—the present Section 1–227—intact.[35] Plainly, in each instance, Congress regarded Section 1–227 as an independent provision of the 1906 act, devoted to broader considerations than those underlying its own statutes.[36]

28. See the numerous statutory provisions cross-referenced following D.C.Code § 1–226 (1967).

29. While, as appellant notes, neither Section 1–226 nor Section 1–227 itself contains a penalty clause, that circumstance bears no significance. As enacted, both provisions empowered the District to "enforce," as well as make, the specified regulations "in addition to those already made under the act of January twenty-sixth, eighteen hundred and eighty-seven * * *." J.Res. Feb. 26, 1892, § 2, 27 Stat. 394; Act of June 30, 1906, ch. 3932, § 4, 34 Stat. 809. The Act of January 26, 1887, 24 Stat. 368, ch. 49, § 1, now Section 1–224, did contain a penalty provision, and it seems obvious that Congress omitted specific penalty clauses from Sections 1–226 and 1–227 simply because it was supplementing Section 1–224 by extending authority to prescribe regulations to two additional categories. Consequently, we must read the three sections *pari materia*, with the result that the penalty provision in Section 1–224 applies to Sections 1–226 and 1–227 to enable the District Government to "enforce" them.

30. See text *supra* at notes 16–19.

31. See note 11, *supra*.

32. Act of July 8, 1932, ch. 465, §§ 1–17, 47 Stat. 650, as amended now D.C.Code §§ 22–3201 to 22–3217 (1967), discussed in Part II, *infra*.

33. Act of July 13, 1892, ch. 159, §§ 1–5, 27 Stat. 116, later codified in D.C.Code §§ 855, 856, 857 (1919).

34. The repealing clause of the 1932 act also repealed "all other Acts or parts of Acts inconsistent herewith." 47 Stat. 654. The quoted language did not intercept Section 1–227 since no inconsistency can be found between a limited substantive statute—the 1932 act—and a statute authorizing broader substantive regulations—Section 1–227. See the discussion in Part II, *infra*.

35. Act of August 23, 1958, Pub.L. 85–730, 72 Stat. 815. See also note 34, *supra*.

36. We cannot accept appellant's argument that unsuccessful efforts by the former Board of Commissioners to obtain legislation supplementing the 1932 statute indicated doubt as to their authority to adopt gun control regulations. The fact

Just as plainly, by divorcing Section 1–227 from wildlife legislation and leaving it available for other local needs, Congress fixed once and for all the objective it was to serve. Like the District Court,[37] we think it clear that the retention of Section 1–227 could foster no congressional purpose other than to empower the District to promulgate regulations of the kind this appeal involves.

## II

We now reach appellant's argument that even if Section 1–227 originally empowered the District to promulgate the regulations under scrutiny, Congress foreclosed further exercise of the power by the enactment of its 1932 gun control law for the District.[38] That law requires, among other things, the licensing

of persons carrying pistols [39] and of dealers in certain types of weapons,[40] and makes possession of pistols by certain classes of persons a crime.[41] The regulations before us go further, in the main by adding rifles and shotguns to the licensing requirement, by exacting firearms registration, and by restricting the sale of ammunition. Appellees claim that the regulations legitimately supplement the statute in areas Congress left untouched.

While the District is invested with broad authority to prescribe local regulations, the ultimate power to legislate for the District resides solely in Congress.[42] Many years ago, Congress granted the District relative autonomy,[43] but briefly thereafter constituted it a municipal corporation,[44] and established

is that on a number of occasions the Commissioners made and amended regulations on that score, and we are unwilling to assume that they acted rashly in doing so. *E. g.*, Regulations, *supra* note 1, art. IX, § 2 (prohibiting possession of firearms by minors), originally promulgated May 1, 1931, and amended March 2, 1934, Minutes and Orders of D. C. Board of Commissioners, vol. 52 at 541, vol. 55 at 229; Regulations, *supra* note 1, art. IX, § 1(9), (prohibiting discharge of firearms), promulgated July 16, 1943, Minutes and Orders of D. C. Board of Commissioners, vol. 64 at 1304(b); Regulations, *supra* note 1, art. IX, § 4(a)–(b), (prohibiting sale of firearms to minors), promulgated June 24, 1952, Minutes and Orders of D. C. Board of Commissioners, vol. 73 at 769.

Furthermore, as we read the Commissioners' requests, the action primarily sought from Congress was in relation to licenses for the ownership and possession of pistols. And whatever congressional inaction on the Commissioners' requests might indicate by way of authority which could arise only by implication, see FTC v. Bunte Bros., 312 U.S. 349, 351–353, 61 S.Ct. 580, 85 L.Ed. 881 (1941), it does not obliterate an authority derived from a specific provision on the subject. Helvering v. Clifford, 309 U.S. 331, 337–338, 60 S.Ct. 554, 84 L.Ed. 788 (1940). What we have just said also answers contentions predicated on congressional refusals to enact more comprehensive gun control laws for the country as a whole.

37. Maryland & D. C. Rifle & Pistol Ass'n v. Washington, *supra* note 3, 294 F.Supp. at 1167.

38. Act of July 8, 1932, ch. 465, §§ 1–17, 47 Stat. 650 as amended now D.C.Code §§ 22–3201 to 22–3217 (1967).

39. D.C.Code § 22–3206 (1967).

40. D.C.Code § 29–3209 (1967).

41. D.C.Code § 22–3203 (1967). See also D.C.Code § 22–3214 (1967).

42. The Constitution, art. I, § 8, cl. 17, empowers Congress "to exercise exclusive Legislation in all Cases whatsoever, over [the] District * * *." See District of Columbia v. John R. Thompson Co., *supra* note 14, 346 U.S. at 109, 73 S.Ct. 1007, 97 L.Ed. 1480; Neild v. District of Columbia, 71 App.D.C. 306, 309–310, 110 F.2d 246, 249–250 (1940).

43. Act of February 21, 1871, ch. 62, 16 Stat. 419, repealed by Act of June 20, 1874, ch. 337, § 1, 18 Stat. 116.

44. D.C.Code § 1–102 (1967) in relevant part provides:
   The District is created a government by the name of the "District of Columbia," by which name it is constituted a body-corporate for municipal purposes, and may * * * exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this Code.
   See District of Columbia v. John R. Thompson Co., *supra* note 14, 346 U.S.

a relationship with it comparable to that commonly existing between municipalities without home rule and their parent states.[45] So it is that principles analogous to those well established in the law governing municipal corporations come into operation in this case.

■ Congressional enactments prevail over local regulations in conflict with them,[46] of course, and Congress may at any time withdraw authority previously delegated to the District, and any regulations dependent on the delegation then lapse.[47] But, just as clearly, Congress may indulge the District in the exercise of regulatory powers, enabling it to provide for its needs as deemed necessary or desirable.[48] Section 1–227 is such a grant, as we have held,[49] and the remaining inquiry is whether Congress, by enacting the 1932 gun control law, preempted the field so as to thereafter preclude the regulation of firearms by the District.[50]

■ Appellant contends that it did, arguing that congressional legislation on a particular subject thwarts additional regulation of that subject by the District.[51] In our view, however, appellant's thesis suggests far too much. To be sure, a municipal regulation cannot permit an act which the statute forbids, or forbid an act which the statute permits.[52] Nor is there room for local regulation where the legislature has dealt with the subject in such manner as to indicate plainly that no further action respecting it is tolerable.[53] But we cannot agree that municipal regulation is precluded simply because the legislature has taken some action in reference to the same subject.[54]

■ The important consideration, we think, is not whether the legislature and municipality have both entered the same field, but whether in doing so they have clashed.[55] Statutory and local regulation may coexist in identical areas although the latter, not inconsistently with the former, exacts additional requirements,[56] or imposes additional penalties.[57] The test of concurrent authority, this court indicated many years ago, is the absence of con-

at 110, 73 S.Ct. 1007; Jones v. District of Columbia, *supra* note 14, 116 U.S.App. D.C. at 304, 323 F.2d at 309.

45. See Metropolitan R. R. v. District of Columbia, 132 U.S. 1, 8–9, 10 S.Ct. 19, 33 L.Ed. 231 (1889) ; Barnes v. District of Columbia, 91 U.S. 540, 544, 551–552, 23 L.Ed. 440 (1875).

46. See Thompson v. Carroll, 63 U.S. 422, 435, 16 L.Ed. 387 (1859) ; District of Columbia v. Libbey, 22 How. 422, 9 App.D.C. 321, 327–330 (1896).

47. Barnes v. District of Columbia, *supra* note 45, 91 U.S. at 544, 23 L.Ed. 440. See also District of Columbia v. John R. Thompson Co. *supra* note 14, 346 U.S. at 109, 73 S.Ct. 1007, 97 L.Ed. 1480.

48. See, e. g., the cases cited *infra* note 58.

49. Part I, *supra*.

50. See note 9, *supra*.

51. For support, appellant cites Baltimore § Ohio Ry. v. Fitzgerald, 35 App.D.C. 116 and Coughlin v. District of Columbia, 25 App.D.C. 251 (1905), but in each of these cases judicial investigation disclosed that the regulatory authority in question— which, in each instance, involved the imposition of affirmative duties—had never been delegated to the District in the first place.

52. See Schneiderman v. Sesanstein, 121 Ohio St. 80, 167 N.E. 158, 159–161, 64 A.L.R. 981 (1929).

53. Galvan v. Superior Court, 70 Cal.2d 851, 76 Cal.Rptr. 642, 452 P.2d 930, 935–936 (*en banc* 1969).

54. E. g., United States Fid. & Guar. Co. v. Guenther, 281 U.S. 34, 36, 50 S.Ct. 165, 74 L.Ed. 683 (1930). See also the cases cited *infra* note 58.

55. See United States Fid. & Guar. Co. v. Guenther, *supra* note 54, 281 U.S. at 36, 50 S.Ct. 165.

56. *Id.* at 35–36, 50 S.Ct. 165. See also La Crosse Rendering Works v. La Crosse, 231 Wis. 438, 285 N.W. 393, 401–402, 124 A.L.R. 511 (1939).

57. See Rossberg v. State, 111 Md. 394, 74 A. 581, 584, 134 Am.St.Rep. 626 (1909).

flict with the legislative will.[58] As the court declared in French v. District of Columbia,[59] where "[t]he subject [is] peculiarly within the scope of the [expressly delegated] police powers of the municipality, the exercise of authority ought not to be questioned unless clearly inconsistent with the expressed will of Congress." [60]

*French* involved the regulation of dog-keeping. There had been in effect since 1878 a statute relating to the muzzling of dogs under certain conditions and providing for the impoundment of errant animals.[61] In 1887, Congress passed what is now Section 1–224, a companion to the section at issue, which expressly empowers the District to regulate the keeping of dogs.[62] Subsequently, purportedly pursuant to the latter section, a dog-muzzling regulation was adopted, and it provided for enforcement of the muzzling requirement by fining the owner rather than by impounding the dog. Finding no indication that congressional entry into the field was meant to exclude local action, this court held that the statute did not forestall the regulation.

The one difference between *French* and the present case is that in *French* the delegation of regulatory power to the District came after enactment of the statute allegedly encroached on, so that arguably the District's concurrent authority was clearer than here. The fact is, however, that the 1932 gun control law, allegedly the preempting statute, was but a substantial reenactment of an earlier statute [63] which was in effect when Section 1–227, the delegating statute, was passed in 1887. The result, then, is that in the present case the division of areas between what was legislated and what was delegated remained essentially unchanged.

Moreover, the point on which *French* might possibly be distinguished was completely absent in Taylor v. District of Columbia,[64] where the substantive legislation came after the delegating legislation. In 1897, Congress required persons selling farm produce within specified street areas to obtain an assignment of space for the purpose.[65] Pursuant to what is now Section 1–224,[66] enacted in 1887, District regulations promulgated in 1902 imposed a similar requirement with respect to different street areas. Again, this court upheld the regulations.[67]

■ We find, too, from the fact that Section 1–224 was not repealed, either in 1932 when the gun control law was passed or in 1958 when the 1906 wildlife legislation was repealed, a satisfying assurance that Congress, having dealt with some aspects of weapons control, left others for regulation by the District. Indeed, as we have pointed out,[68] we cannot fathom any other purpose to be achieved by leaving Section 1–227 in force. We are aware of a brief observation in the legislative history of the 1932 act that it would effect a "comprehensive program of [gun] control," [69] but we cannot accept that as an expression of intent to preempt the entire field. Examination discloses that the 1932 act is not comprehensive with re-

---

58. See French v. District of Columbia, 32 App.D.C. 106 (1908) ; Taylor v. District of Columbia, 24 App.D.C. 392, 404 (1904).

59. *Supra* note 58.

60. 32 App.D.C. at 108.

61. Act of June 19, 1878, ch. 323, 20 Stat. 173.

62. D.C.Code § 1–224 ¶ 7th (1967).

63. Act of July 13, 1892, ch. 159, §§ 1–5, 27 Stat. 116. See also note 33. *supra,* and accompanying text.

64. *Supra* note 58.

65. J.Res. Feb. 20, 1897, 29 Stat. 702.

66. D.C.Code § 1–224 ¶ 3d (1967).

67. 24 App.D.C. at 392.

68. Text *supra* at note 37.

69. S.Rep.No.575, 72nd Cong., 1st Sess. 2 (1932).

spect to rifles and shotguns,[70] and the regulations under review demonstrate a clear design to leave the areas preempted by the statute unaffected.

In sum, we hold that Section 1–227 authorized passage of the regulations under attack. We discern no exertion of congressional prerogatives disabling the District of Columbia Council from adopting them.[71] The judgment of the District Court is accordingly

Affirmed.

---

70. As the District aptly states in its brief, "before the Council adopted the regulations here in question a demented drug addict with a long record of felony convictions could, without violating any law, walk down Pennsylvania Avenue with a loaded rifle or shotgun on his shoulder."

71. Compare Galvan v. Superior Court, *supra* note 53; Grimm v. City of New York, 56 Misc.2d 525, 289 N.Y.S.2d 358, 363 (1968).