Marion R. McINTOSH et al., Appellants,

v.

Walter E. WASHINGTON et
al., Appellees.

No. 12073.

District of Columbia Court of Appeals.

Argued Dec. 14, 1977.
Decided Oct. 24, 1978.

Tedson J. Meyers, Washington, D. C., with whom Charles R. Work, Timothy J. Waters, and Collister Johnson, Jr., Washington, D. C., were on the briefs and supplemental memorandum, for appellants.

David P. Sutton, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the case was briefed and argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief and supplemental memorandum, for appellees.

Candace S. Kovacic, Washington, D. C., with whom James S. Campbell, Washington, D. C., was on the brief, for National Council to Control Handguns as amicus curiae.

Before NEWMAN, Chief Judge, and KELLY and HARRIS, Associate Judges.

KELLY, Associate Judge:

On June 26, 1976, the District of Columbia Council (the Council) enacted the Firearms Control Regulations Act of 1975 (the Act or the Firearms Act).[1] The legislation was signed by the Mayor on July 23, 1976, and was sent to Congress for a 30-day review in accordance with § 1–147 of the District of Columbia Self-Government and Governmental Reorganization Act (the

---

1. D.C.Code 1978 Supp., § 6–1801 *et seq.* (Firearms Control Regulations Act of 1975, D.C.Law 1–85, 23 D.C.Reg. 2464 (1976)). The Act circumscribes the persons eligible to register firearms in the District and delineates the types of firearms which can be registered. It requires, with certain exceptions that firearms registered under prior law be reregistered within a specified period, deals with the licensing and regulation of dealers in firearms, restricts the sale and transfer of firearms and ammunition, and the manner in which lawfully registered firearms may be possessed.

Home Rule Act).[2] Resolutions to disapprove the Firearms Act were introduced in the House of Representatives (122 Cong. Rec. H8017 and H8103) (daily ed. July 29 and 30, 1976), but were unsuccessful; consequently, the Act became effective as D.C.Law 1–85 on September 24, 1976.[3]

In an action for declaratory and injunctive relief filed in the Superior Court on November 18, 1976, appellants[4] sought to declare the Firearms Act invalid and to enjoin its enforcement on grounds that the Act is an unauthorized exercise of the Council's legislative powers and that it violates certain designated provisions of the United States Constitution.[5] After hearing arguments of counsel, the trial court enjoined the enforcement of the Act. Appellees promptly appealed the grant of the injunction and moved for a stay.[6] On February 4, 1977, following argument on the motion, this court, by written order, granted the stay, stating:

> The underlying premise of the trial court's order here is that the City Council was without any power (because of the limitation in the District of Columbia Self

Government Act § 602(a)(9), codified § 1–147(a)(9)) to promulgate the new Firearms Act. Under authority of *Maryland and D. C. Rifle & Pistol Association v. Washington,* 142 U.S.App.D.C. 375, 442 F.2d 123 (1971), we hold that the premise is clearly wrong. We do not, however, intimate any view about whether particular provisions of the new Act might be invalid because they conflict with Title 22 or violate some constitutional provision. *See Pistol Ass'n, supra* at 377 n.9 [442 F.2d 123]. Nor do we intimate any view about whether those conflicting provisions, if any, might be severable.

Thereafter, cross-motions for summary judgment on the merits were filed in the trial court, which ultimately granted the motion of appellees and denied that of the appellants. In its written order disposing of the motions, the court held that the enactment of the Firearms Act was a valid exercise of the Council's congressionally delegated legislative power. It rejected all but one of appellants' constitutional attacks on the Act.[7] Appellants here reiterate their

---

**2.** D.C.Code 1978 Supp., § 1–121 *et seq.* (District of Columbia Self-Government and Governmental Reorganization Act, Pub.L.No.93–198, 87 Stat. 774 (1973)). Section 1–147(c)(1) provides that no act of the Council "shall take effect until the end of the 30-day period" after it has been transmitted to Congress "and then only if during such 30-day period both Houses of Congress do not adopt a concurrent resolution disapproving such act." Section 1–147(c)(2), applicable here, enumerates the procedures for acts transmitted to Congress which are "with respect to" any act codified in Title 22, 23, or 24 of the D.C.Code. The second subsection differs from the first in that only one House's disapproving resolution is necessary to prevent the Council's enactment on the subject matter of the designated Code sections from becoming effective law at the close of the 30-day review period.

**3.** On August 11, 1977, the Council enacted the Emergency Firearms Control Regulations Act Technical Amendments Act of 1977 (24 D.C. Reg. 1778 (1977)), which amended the Firearms Act by (1) conforming the definition of "sawed-off shotgun" (D.C.Code 1978 Supp., § 6–1802(15)) to that in D.C.Code 1973, § 22–3201; (2) allowing organizations having employees licensed to carry firearms to register newly acquired pistols; (3) exempting firearms regis-

trants from certain tests; and, (4) correcting typographical errors, cross-references and spelling.

**4.** Appellants are ten individuals, two corporations, and one partnership, all of whom are either residents of or have their principal places of business in the District of Columbia. Several of the individual appellants wish to buy handguns or currently own handguns, one in clear violation of the Act. The institutional appellants are the National Rifle Association of America, National Detective Agencies, Inc., and Phillips Police Equipment Company. The latter two appellants do business in the District of Columbia based on the sale, possession and use of handguns.

**5.** *See* Part III, *infra.*

**6.** Appellees are the District of Columbia, its Mayor, and its Chief of Police. The individual appellees are sued in their official capacities.

**7.** The trial court agreed with appellants' constitutional argument holding that "§ 201(b)(3) [of the Firearms Act, codified D.C.Code 1978 Supp., § 6–1811(b)(3)] which permits nonresidents to possess a handgun while participating in or traveling to 'any lawful recreational fire-

arguments that the Firearms Act is an unauthorized exercise of the legislative powers delegated to the Council by the Home Rule Act, that it is unconstitutional, and that it conflicts with the provisions of the District of Columbia Administrative Procedure Act (DCAPA).[8] For the reasons which follow, we affirm in part and reverse in part.

In Part I of this opinion we decide the threshold issue of the Superior Court's jurisdiction to entertain actions for declaratory judgment. In Part II, we consider whether the Firearms Act is an *ultra vires* measure which was enacted by the council beyond the scope of its delegated powers. We examine the constitutional challenge to the Act in Part III, and in Part IV we discuss briefly the procedural (DCAPA) claims that appellants have raised. Part V deals with specific claims of two appellants.

## I

█ A declaratory judgment is one which determines and declares the rights of the parties without being immediately coupled with a coercive decree. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It is essentially an equitable action, *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), and differs from other equitable actions on the question of immediate relief sought rather than on jurisdictional concerns. *Aetna Life Insurance Co. v. Haworth, supra.*

█ The concept that a court possessing general equity jurisdiction[9] has authority to grant declaratory relief as an incidental power inherent in such jurisdiction is firmly established in our jurisprudence. *See, e. g., Sharon v. Tucker,* 144 U.S. 533, 544–48, 12 S.Ct. 720, 36 L.Ed. 532 (1892); *Fidelity National Bank & Trust Co. v. Swope,* 274 U.S.

123, 132, 47 S.Ct. 511, 71 L.Ed. 959 (1927); *Nashville, C. & St. L. Ry. v. Wallace,* 288 U.S. 249, 263–64, 53 S.Ct. 345, 77 L.Ed. 730 (1933); *Petition for Kariher,* 284 Pa. 455, 131 A. 265 (1925); Borchard, Declaratory Judgments 137–49 (2d ed. 1941); 1 Anderson, Actions for Declaratory Judgments §§ 1–2 (1951).

In *Nashville, C. & St. L. Ry. v. Wallace, supra* 288 U.S. at 263, 53 S.Ct. at 348, the Supreme Court stated:

While the ordinary course of judicial procedure results in a judgment requiring an award of process or execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function. *Fidelity National Bank v. Swope, supra,* 1927. This Court has often exerted its judicial power to adjudicate boundaries between states, although it gave no injunction or other relief beyond the determination of the legal rights which were the subject of controversy between the parties, *Louisiana v. Mississippi,* 202 U.S. 1, 26 S.Ct. 408, 50 L.Ed. 913; *Arkansas v. Tennessee,* 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638; *Georgia v. South Carolina,* 257 U.S. 516, 42 S.Ct. 173, 66 L.Ed. 347; *Oklahoma v. Texas,* 272 U.S. 21, 47 S.Ct. 9, 71 L.Ed. 145; *Michigan v. Wisconsin,* 272 U.S. 398, 47 S.Ct. 114, 71 L.Ed. 315, and to review judgments of the Court of Claims, although no process issues against the Government. *United States v. Jones,* 119 U.S. 477, 7 S.Ct. 283, 30 L.Ed. 440; *compare District of Columbia v. Eslin,* 183 U.S. 62, 22 S.Ct. 17, 46 L.Ed. 85; *Ex parte Pocono Pines Hotels Co.,* 285 U.S. 526, 52 S.Ct. 392, 76 L.Ed. 923, reported below in 73 Ct.Cl. 447. As we said in *Fidelity National Bank v. Swope, supra,* 274 U.S. 132, 47 S.Ct. 511, "Naturalization proceedings, *Tutun v. United States,* 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738; suits to determine a matrimonial or other status; suits for instruc-

---

arm-related activity' *is* a violation of *Equal Protection.*" (Emphasis in original.) In the court's view, § 6–1811(b)(3) constituted irrational "discrimination between nonresidents and residents wishing to engage in lawful pistol target shooting . . . ." Accordingly, the court ruled that the provision be severed from the Act.

**8.** D.C.Code 1978 Supp., § 1–1501 *et seq.* (District of Columbia Administrative Procedure Act Amendments Act of 1975, D.C.Law 1–19, 22 D.C.Reg. 2048 (1975)).

**9.** The Superior Court possess general equity jurisdiction. D.C.Code 1973, § 11–921.

tions to a trustee or for the construction of a will; *Traphagen v. Levy,* 45 N.J.Eq. 448; 18 A. 222; bills of interpleader so far as the stakeholder is concerned, *Wakeman v. Kingsland,* 46 N.J.Eq. 113, 18 A. 680; bills to quiet title where the plaintiff rests his claim on adverse possession, *Sharon v. Tucker,* 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532; are familiar examples of judicial proceedings which result in an adjudication of the rights of litigants, although execution is not necessary to carry the judgment into effect, in the sense that damages are required to be paid or acts to be performed by the parties." See also *Old Colony Trust Co. v. Commissioner, supra* [279 U.S. 724], 725, 49 S.Ct. 499, 73 L.Ed. 918; *La Abra Silver Mining Co. v. United States,* 175 U.S. 423, 20 S.Ct. 168, 44 L.Ed. 223.

State appellate courts have also recognized that quite apart from such statutory enactments as the Uniform Declaratory Judgment Act, (12 U.L.A.) § 1 *et seq.* (which has been adopted by numerous states), declaratory judgment procedures have existed and been used in many areas of the law, both in English and American practice. *See, e. g., Petition of Kariher, supra; Lynn v. Kearney County,* 121 Neb. 122, 236 N.W.2d 192 (1931).

In 1934, Congress passed the Federal Declaratory Judgment Act, which is now incorporated at 28 U.S.C. § 2201. In affirming the constitutionality of the statute in face of a challenge that it purported to extend the jurisdiction of the federal courts beyond the constitutional limit of "cases" and "controversies," the Supreme Court, in *Aetna Life Insurance Co. v. Haworth, supra* 300 U.S. at 241, 57 S.Ct. at 464, said:

Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the

parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. *Nashville, C. & St. L. Ry. Co. v. Wallace, supra,* 288 U.S. p. 263, 53 S.Ct. 345; *Tutun v. United States,* 270 U.S. 568, 576, 577, 46 S.Ct. 425; *Fidelity National Bank v. Swope,* 274 U.S. 123, 132, 47 S.Ct. 511; *Old Colony Trust Co. v. Commissioner, supra* [279 U.S.], p. 725, 49 S.Ct. 499. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. *Nashville, C. & St. L. Ry. Co. v. Wallace, supra* [288 U.S.], p. 264, 53 S.Ct. 345.

By its reliance upon such cases as *Nashville, C. & St. L. Ry. Co. v. Wallace, supra,* and *Fidelity National Bank & Trust Co. v. Swope, supra,* the Supreme Court reflected its continued recognition of: (1) the existence of federal court jurisdiction to grant declaratory relief before the enactment of the Federal Declaratory Judgment Act, 300 U.S. at 241, 57 S.Ct. 461, and (2) the adoption of that Act as an exercise of the power of Congress to provide remedies and define procedures for cases already within the federal courts' constitutional jurisdiction, 300 U.S. at 240, 57 S.Ct. 461.

▉▉▉ Thus, we now make explicit that which we implied in *Spock v. District of Columbia,* D.C.App., 283 A.2d 14, 20 n.16 (1971)—the Superior Court has authority to award declaratory judgments in cases within the jurisdiction of that court.[10]

## II

The central controversy presented on this appeal is whether the Firearms Act constitutes a legitimate exercise of the authority

---

**10.** The authority of the United States District Court for the District of Columbia to issue declaratory judgment relief extended to cases where that court was sitting as the District of Columbia's court of general equity jurisdiction. *E. g., Jordan v. Acacia Mutual Life Insurance Co.,* 133 U.S.App.D.C. 224, 409 F.2d 1141, *cert. denied,* 395 U.S. 959, 89 S.Ct. 2101, 23 L.Ed.2d 746 (1969); *Gordon v. Matthews,* 106 U.S.App.

D.C. 400, 273 F.2d 525 (1959). The Congress, by enacting the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L.No.91–358, 84 Stat. 473 (codified at D.C.Code 1973, § 11–101 *et seq.*) intended to transfer to the new local courts all those local judicial powers previously exercised by the United States District Court for the District of Columbia. *Palmore v. United States,* 411 U.S. 389, 93

vested in the Council by D.C.Code 1973, § 1-227, or whether its enactment contravenes the limitation imposed on the Council's legislative authority by § 1-147(a)(9) of the Home Rule Act, D.C.Code 1978 Supp.[11] On this question, appellants assert that both the plain meaning of § 1-147(a)(9) and its legislative history evince a congressional intent to prohibit the Council from enacting the questioned legislation.

■ Whether the Firearms Act is a valid measure under the Home Rule Act is a question of statutory construction requiring an analysis of the following provisions: (1) Section 1-227 (regulation relative to firearms, explosives, and weapons), which provides:

The District of Columbia Council is hereby authorized and empowered to make, and the Commissioner of the District of Columbia is hereby authorized and empowered to enforce, all such usual and reasonable police regulations, in addition to those already made under sections 1-224, 1-225, and 1-226 as the Council may deem necessary for the regulation of firearms, projectiles, explosives, or weapons of any kind in the District of Columbia. [D.C.Code 1973, § 1-227.]

(2) Section 1-144, which states that

Subject to the limitations specified in section[s] . . . 1-147, the legislative

power granted to the District by this Act is vested in and shall be exercised by the Council in accordance with this Act. In addition, except as otherwise provided in this Act, all functions granted to or imposed upon, or vested in or transferred to the District of Columbia Council, as established by Reorganization Plan Number 3 of 1967, shall be carried out by the Council in accordance with the provisions of this Act. [D.C.Code 1978 Supp., § 1-144.]

and (3) Section 1-147, which provided in pertinent part:

(a) The Council shall have no authority . . . to

. . . . .

(9) enact any act, resolution, or rule with respect to any provision of title 23 of the District of Columbia Code (relating to criminal procedure), or with respect to any provision of any law codified in title 22 or 24 of the District of Columbia Code (relating to crimes and treatment of prisoners) during the [twenty-four] full calendar months immediately following the day on which the members of the Council first elected pursuant to this Act take office. [D.C.Code 1976 Supp., § 1-147.][12]

S.Ct. 1670, 36 L.Ed.2d 342 (1973); *see* D.C. Code 1973, §§ 11-921 to -946. This clear manifestation of congressional intent buttresses our view of the existence in the *Superior Court* of the power to award such declaratory relief.

**11.** As the trial court recognized, absent § 1-147(a)(9) the Council could enact legislation regarding matters covered by Title 22 of the D.C.Code. The Home Rule Act, D.C.Code 1978 Supp., § 1-124, delegates to the Council legislative power over "all rightful subjects of legislation within the District," and § 1-144(a) of that Act, D.C.Code 1978 Supp., vests the Council with all legislative functions granted to or vested in its predecessor District of Columbia Council. One of these functions is provided for in D.C.Code 1973, § 1-227 (*see Maryland & D.C. Rifle & Pistol Ass'n, Inc. v. Washington,* 142 U.S.App.D.C. 375, 442 F.2d 123 (1971)), the section on which the Council relied for its authority to enact the Firearms Act. Council of

the District of Columbia Report, Bill No. J-164, April 21, 1976, at 6-7.

**12.** After enactment of the Firearms Act, Congress amended § 1-147(a)(9) (Dent Amendment to Pub.L.No.94-402, 90 Stat. 1220 (1976)), to extend the section's time prohibition to forty-eight months. Appellants urge this court to consider the amended section in construing the original section, arguing that the amended section demonstrates that in passing § 1-147(a)(9), the predecessor Congress intended to foreclose enactment of a Firearms Act. While subsequent congressional legislation may be considered to assist in the interpretation of prior legislation upon the same subject, *see, e. g., Tiger v. Western Investment Co.,* 221 U.S. 286, 309, 31 S.Ct. 578, 55 L.Ed. 738 (1911), the Supreme Court has stated that "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80

Council members first elected pursuant to the Home Rule Act took office on January 2, 1975. Accordingly, appellants contend that no act, resolution, or rule with respect to any provision of any law codified in Title 22 of the D.C. Code was the proper subject of legislative action by the Council until after January 2, 1977.

### A.

Appellants contend that the plain meaning of § 1–147(a)(9) prevents the Council's action. We think, however, that the validity of the Firearms Act can be sustained under the Council's newly conferred power set forth in § 1–144(a) of the Home Rule Act notwithstanding the limitation on such power contained in § 1–147(a)(9).[13]

Appellants argue that the Firearms Act is an act "with respect to" a provision of law codified in Title 22 because it deals with many of the same subject matters covered in Chapter 32 of Title 22.[14] The thrust of this argument is that the phrase "with respect to any provision of any law codified in Title 22" means with respect to the *subject matter* of any provision of Title 22.[15] This is simply not the case. Acceptance of this argument would be to hold the Council powerless to act in many areas which have traditionally fallen within its local regulatory domain. In precluding the Council from legislating "with respect to" Title 22, Congress merely inserted a time constraint on the Council's authority to make changes, modifications, or amendments in local criminal statutes until such time as a local Law Revision Commission could make a complete reevaluation and revision of the District's Criminal Code. *See Background and Legislative History of H.R. 905.6, H.R. 9632 and Related Bills Culminating in the District of Columbia Self-Government Act* (1976) at 2116–17, 2937, 3013, 3041–42, 3054, 3114. This conclusion is supported by the sole express indication of legislative intent; namely, the statement of one of the sponsors that

> The Conference Committee . . . agreed to transfer authority to the Council to make changes in Titles 22, 23, and 24 of the District of Columbia Code, effective January 2, 1977. After that date, changes in Titles 22, 23 and 24 by the Council shall be subject to a Congressional veto by either House of Congress within 30 legislative days . . . . *It is the intention of the Congress that their respective legislative committees will seek to revise the District of Columbia Criminal Code prior to the effective date of the*

S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). *See United States v. United Mine Workers*, 330 U.S. 258, 282, 67 S.Ct. 677, 91 L.Ed. 884 (1947). *See also Haynes v. United States*, 390 U.S. 85, 87 n. 4, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); *Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 335 n.7 (2d Cir. 1977). Of particular consequence in the instant case is the fact that the former Congress did not address the specific issue presented here, i. e., the gun control aspects of Title 22 of the D.C.Code. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

**13.** Section 1–147(a)(9) of the Home Rule Act explicitly limits the authority delegated to the Council in § 1–144(a) of that same Act, yet § 1–144(a) distinguishes between transferred legislative power and newly conferred legislative power.

**14.** *Compare* D.C.Code 1973, § 22–3202 *with* Firearms Act, D.C.Code 1978 Supp., §§ 6–1811, –1812(d), –1812(e), –1876 (circumstances under which a pistol may be lawfully possessed); *compare* D.C.Code 1973, §§ 22–3209, –3210 *with* Firearms Act, D.C.Code 1978 Supp., §§ 6–1841, –1849 (licensing of those who deal in weapons); *compare* D.C.Code 1973, § 22–3208 *with* Firearms Act, D.C.Code 1978 Supp., §§ 6–1851, –1852 (regulation of the transfer of firearms).

**15.** Appellants appear to say that the Firearms Act is invalid because the Council cannot alter, amend or modify "policies" in Title 22 of the Code. This argument, which is based on the erroneous assumption that congressional silence on Title 22 subjects signifies a congressional fiat that the Council not exercise regulatory powers in those areas, in unpersuasive.

*transfer of authority referred to.* [Emphasis added.] [16]

### B.

In considering also the power transferred to the present Council,[17] a brief account of the history of gun control legislation in the District of Columbia is helpful.

Before enactment of the present Firearms Act, weapons control statutes and regulations of the District of Columbia were codified in Chapter 32 of Title 22 of the D.C.Code [18] and in Articles 50 through 55 of the D.C. Police Regulations. Enacted by Congress in 1932, Chapter 32 of Title 22, provides, *inter alia*, for the licensing of pistols and weapons dealers, and prohibits the carrying of a pistol without a license, the sale of firearms to minors, and the possession of inherently dangerous weapons (*e. g.*, machine guns, sawed-off shotguns, and blackjacks). There are criminal penalties of fines up to $1,000 and imprisonment up to one year for violations of the statute.

In 1968, police regulations covering the possession, registration and sale of firearms and destructive devices were adopted. D.C. Pol.Reg. Arts. 50–55. These regulations provide, *inter alia*, that all firearms either brought into the District, sold in the District, or otherwise possessed in the District must be registered with the Chief of Police. The validity of these regulations was confirmed by the United States Court of Appeals for the District of Columbia in the pre-Home Rule decision of *Maryland & D. C. Rifle & Pistol Ass'n, Inc. v. Washington*, 142 U.S.App.D.C. 375, 442 F.2d 123 (1971) (*Pistol Ass'n*). In that case, the Association argued, as to appellants here, that in enacting D.C.Code 1973, §§ 22–3201 to –3217, an admittedly comprehensive legislative scheme, Congress had preempted the field and withdrawn from the Council (the predecessor to the present Council) legislative authority to enact gun control regulations under D.C.Code 1973, § 1–227. The court rejected this argument, stating:

> The important consideration, we think, is not whether the legislature and municipality have both entered the same field, but whether in doing so they have clashed. Statutory and local regulation may coexist in identical areas although the latter, not inconsistently with the former, exacts additional requirements, or imposes additional penalties. The test of concurrent authority . . . is the absence of conflict with the legislative will. As the court declared in *French v. District of Columbia* [32 App.D.C. 106 (1908)] where "[t]he subject [i]s peculiarly within the scope of the [expressly delegated] police powers of the municipality, the exercise of authority ought not to be questioned unless clearly inconsistent with the expressed will of Congress." [*Id.* at 382–83, 442 F.2d at 130–31 (footnotes omitted).]

Thereafter, in *Firemen's Insurance Company of Washington, D. C. v. Washington*, 157 U.S.App.D.C. 320, 483 F.2d 1323 (1973), in referring to its *Pistol Ass'n* decision, the court observed:

> Given the potentially greater responsiveness of local government to local problems and the recognition that Congress cannot realistically be expected to deal with every aspect of a local problem, the court determined that the municipality should be given the benefit of that rea-

16. Joint Statement of the Committee of Conference, H.R.Rep.No.93–703, 93d Cong., 1st Sess. 76 (1973).

17. Appellants base their legislative history analysis of § 1–147(a)(9) exclusively on the asserted scope of the Council's *newly conferred* powers (as those powers may be limited by § 1–147(a)(9)).

18. In 1892, Congress enacted legislation governing the carrying and selling of firearms in the District of Columbia. 27 Stat. 116 (1892).

Several years later it passed legislation governing the "killing of wild birds and wild animals in the District of Columbia", 34 Stat. 808 (1906), which included language similar to that currently contained in the D.C.Code 1973, § 1–227. When the 1892 legislation was replaced by the basic provisions of Title 22, Chapter 32 of the D.C.Code, the District's regulatory authority under the 1906 Act was left unchanged. 47 Stat. 650 (1932), as amended, D.C.Code 1973, §§ 22–3201, –3217.

sonable doubt and upheld the local regulation. . . . [*Id.* at 326, 483 F.2d at 1329.]

We concur in the rationale of those decisions.

C.

Despite these decisions, which antedate the passage of the Home Rule Act, appellants nevertheless assert that the legislative history of § 1–147(a)(9) indicates a congressional intent to prohibit the Council from enacting a comprehensive criminal regulatory scheme such as the Firearms Act. The legislative history is devoid of any reference to firearms, however. Moreover, appellants' historical interpretation contradicts the core and primary purpose of the Home Rule Act, which was to relieve Congress of the burden of legislating upon essentially local matters "to the greatest extent possible, consistent with the constitutional mandate." D.C.Code 1978 Supp., § 1–121(a).[19]

The legislative history does not suggest that in enacting § 1–147(a)(9), Congress intended to deter enactment of a gun control measure, or of other similar exercises of police power in accordance with past local legislative practices. In their attempt to show that antecedent congressional enactments have foreclosed enactment of a Firearms Act, appellants rely on certain provisions of Chapter 32 of Title 22 of D.C.Code 1973. In an analogous statute, however, the Gun Control Act of 1968, 82 Stat. 1213, 18 U.S.C. § 927, Congress provided:

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a *direct and positive conflict* between such provision and the law of the State so that the two cannot be reconciled or consistently stand together. [Emphasis added.]

No direct and positive conflict is apparent here. Appellants' contention that the Firearms Act is an impermissible exercise of local legislative power simply because it deals with matters not previously prohibited by Title 22 cannot be reconciled with the teachings of *Pistol Ass'n, supra* 142 U.S. App.D.C. at 382–83, 442 F.2d at 130–31, and recent Supreme Court decisions cited in *Kargman v. Sullivan,* 552 F.2d 2, 10–13 (1st Cir. 1977), including *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) and *New York State Department of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). These decisions explain that a parallel enactment in a given area cannot be stricken simply because it expands the scope of restrictions imposed by a parent legislative body.[20] The Firearms Act, much like the predecessor gun control regulations upheld in *Pistol Ass'n,* fits within the general pattern of antecedent congressional enactments.

D.

Turning now to the gun control legislation here in controversy, we focus on § 708 of the Firearms Act, D.C.Code 1978 Supp., § 6–1801 note, which provides in pertinent part:

(a) District of Columbia Regulations Nos. 68–15 and 69–7 (Articles 50 to 55 inclusive of the police Regulations of the District of Columbia) are hereby repealed. . . .

Thus, the language of the Act makes explicit the Council's intention to repeal those police regulations which have historically established the gun control framework for this jurisdiction, not Title 22 of the D.C. Code.

Enacted as a comprehensive regulatory scheme for control of the use and sale of firearms in the District of Columbia, the Firearms Act's purpose is to "freeze" the

**19.** Report of the Committee on the District of Columbia on the District of Columbia Self-Government and Governmental Reorganization Act, H.R.Rep.No.93–482, 93d Cong., 1st Sess. 50 (1973).

**20.** When, as in the instant case, local law advances important and uniquely local interests, the courts are especially reluctant to interfere in the name of preemption. *See Kargman v. Sullivan, supra* at 10–13.

handgun population within the District by expanding and strengthening preexisting firearm registration standards and to prescribe minor criminal penalties for the violation of its provisions. The Act resembles the Police Regulations which it supplants in that it provides for registration of firearms (Subchapter II, D.C.Code 1978 Supp., §§ 6–1811 to –1821), regulation of the sale of firearms and destructive devices (Subchapters II, IV and V, D.C.Code 1978 Supp., §§ 6–1811, –1841 to –1849, –1851, –1852), regulation of carrying firearms (Subchapter VII, D.C.Code 1978 Supp., § 6–1872), and regulation of the sale and possession of ammunition (Subchapter V and VI, D.C. Code 1978 Supp., §§ 6–1851, –1852, –1862). After extensive legislative study, the Council's Judiciary Committee concluded:

> [W]ith reference to the possession, sale, purchase and control of any firearm or destructive device in the District of Columbia, the design and scope . . . of the current D.C. Police Regulations, Articles 50 through 55, have not been sufficiently effective in reducing the potentiality of gun-related deaths and gun-related crimes from occurring within the District of Columbia, and there is a need to significantly improve the capacity of the District government to monitor the traffic of firearms within this jurisdiction.[21]

In fact, § 1–128 of the Home Rule Act, D.C.Code 1978 Supp., specifically allows the Council to amend pre-Home Rule regulations by providing that

> No law or regulation which is in force on January 2, 1975 [the effective date of title IV of this Act], shall be deemed amended or repealed by this Act except to the extent specifically provided herein or to the extent that such law or regulation is inconsistent with this Act, but any

such law or regulation may be amended or repealed by act or resolution as authorized in this Act.

D.C.Code 1973, § 1–227 is not inconsistent with the Home Rule Act, and it is clear that legislative power transferred from the predecessor Council to the new Council necessarily included the function of enacting police regulations pursuant to D.C.Code 1973, § 1–226 and gun control measures pursuant to D.C.Code 1973, § 1–227.

It was the trial court's view, in which we concur, that the congressional intent behind § 1–147(a)(9) was to reserve to itself an interest in changing the criminal code for purposes of clarification and improvement.[22] The intent of Congress was to declare a moratorium on the Council's new legislative authority while the D.C. Law Revision Commission proposed and Congress considered a complete revision of the D.C. Criminal Code.[23] Had Congress intended the § 1–147(a)(9) limitation to restrict the Council's authority to enact municipal ordinances and local police and regulatory schemes, surely it would have made that clear either in the Act or its legislative history.

### III

■ The contention that the Firearms Act violates certain provisions of the Constitution is based on assertions that the Act (1) contains invalid, irrational, or illegitimate distinctions which offend equal protection (through the due process clause); (2) denies due process by imposing criminal penalties without requiring *scienter* or *mens rea*; (3) places an unreasonable burden on interstate commerce; and (4) is so vague as to be void. We find no merit in any of these constitutional challenges.[24]

---

**21.** Report of the Committee on the Judiciary and Criminal Law, April 21, 1976, appears in "Committee Print" of the House Committee on the District of Columbia, 94 Cong., 2d Sess. (July 26, 1976).

**22.** *See* President's Commission on Crime in the District of Columbia (1966), 122 Cong.Rec. H8797 (daily ed. Aug. 23, 1976).

**23.** *See* Joint Statement of the Committee of Conference, H.R.Rep.No.93–703, 93d Cong., 1st Sess. 76 (1973).

**24.** Amicus curiae contends that only one of appellants' constitutional questions (the alleged *equal protection violation*) can be considered as being properly presented for judicial resolution at this time. Amicus cites *Pistol Ass'n, supra* 142 U.S.App.D.C. at 377 n.9, 442 F.2d at 125

## A.

The initial challenge to the Firearms Act is to D.C.Code 1978 Supp., § 6–1872, which allegedly violates equal protection by allowing individuals to maintain an assembled firearm at their places of business but disallowing the maintenance of assembled weapons at home. Under the Act, firearms kept at home must be unloaded and disassembled or locked.

 Judicial inquiry into equal protection claims necessarily requires a determination of whether the statutory classifications drawn are reasonable in light of the statute's purpose. *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). Normally, wide discretion is allowed the legislative judgment, which is given the benefit of every circumstance which supports the classification as reasonable rather than arbitrary and invidious. *See, e. g., McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). The rational basis standard is satisfied by the significant and substantial authoritative data which supports the legislative distinction challenged by appellants. *See, e. g., Crimes of Violence, A Staff Report of the National Commission on the Causes and Prevention of Violence*, 22,

224 Vol. II (December 1969); *To Establish Justice To Insure Domestic Tranquility, Final Report of the National Commission on the Causes and Prevention of Violence*, 197 (December 1969). The Council's Judiciary Committee found, *inter alia*, a need to improve the District's capacity to monitor the traffic of firearms in this city; that the availability of firearms was a major contributing factor to crime; that for each intruder stopped by a firearm there are four gun-related accidents within the home; that firearms more frequently are used in situations of violence among friends and relatives, and that most murders result from spontaneous violence by law-abiding citizens where the killer and victim are acquainted. There is, then, a clear rational basis, based on legislative findings, to distinguish between a home and a business establishment in the Act. We thus conclude that the classification in § 6–1872 relates to the purpose for which it is made and lacks the kind of discrimination from which the equal protection clause affords protection. *See Railway Express Agency, Inc. v. New York, supra; contra McLaughlin v. Florida, supra* 379 U.S. at 191, 85 S.Ct. 283 (racial classification); *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (voting classification); *Massachusetts Board of Retirement v. Murgia*,

n.9, to support its contention that by "attacking the [Firearms Act] on its face rather than as applied, and presenting questions that [appellants] have no standing to raise, appellants ask this court to render an advisory opinion." We find the citation inapposite since in *Pistol Ass'n* the constitutional questions raised on appeal were not presented to the court below and the parties, before the appeal, agreed that questions as to the validity of specific aspects of the regulations were not yet ripe for decision.

A request for declaratory relief, however, may be considered independent of whether other forms of relief are appropriate. *See United Public Workers v. Mitchell*, 330 U.S. 75, 93, 67 S.Ct. 556, 91 L.Ed. 754 (1947); 6A J. Moore's Federal Practice ¶ 57.08[3] (2d ed. 1974); cf. *United States v. California*, 332 U.S. 19, 25–26, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947) (declaratory relief proper even though subject matter of decree, coastal line, is indefinite as to exact location). In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court stated

that the difference between an abstract question and a "controversy" contemplated by the Federal Declaratory Judgment Act is necessarily one of degree, adding that "it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Id.* at 273, 61 S.Ct. at 512. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Aetna Life Ins. Co. v. Haworth, supra* 300 U.S. at 239–42, 57 S.Ct. 461. Since there is a live dispute between the parties in the instant case, we conclude that appellants herein have standing to be before this court, *see United States v. SCRAP*, 412 U.S. 669, 688–89, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and that it is appropriate for us to consider the constitutional claims at the present time.

427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

 The trial court found that § 6–1811(b)(3) of the Firearms Act unconstitutionally discriminates against local residents who wish to engage in lawful pistol target shooting activities by allowing only nonresidents to engage in such activities. Consequently, it severed § 6–1811(b)(3) from the Act, the result being that neither residents nor non-residents may possess a handgun while participating in or traveling to "any lawful recreational firearm-related activity" in the District. We conclude that the trial court's construction of § 6–1811(b)(3) was erroneous, for it was the Council's intent (which the government concedes) that both residents and nonresidents of the District be allowed to participate in such recreational activities so long as their firearms are validly registered in their respective jurisdictions and, also, meet local safety criteria. Accordingly, this ruling of the court cannot be sustained.

### B.

 The contention that the Firearms Act offends constitutional due process requirements by imposing criminal penalties on those who fail to register firearms, regardless of their knowledge of the duty to register, is unpersuasive.[25] Whether *scienter* is a necessary element of a statutory crime, though not expressed in the statute, is a question of legislative intent to be answered by a construction of the statute. *United States v. Balint*, 258 U.S. 250, 251–52, 42 S.Ct. 301, 66 L.Ed. 604 (1922). We agree with the trial court's determination that such knowledge is not required.

 Appellant's reliance on *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), and *United States v. Mancuso*, 420 F.2d 556 (2d Cir. 1970), is misplaced. These two cases carve out very narrow exceptions to the general rule that ignorance of the law is no defense. Except

under the unique circumstances of *Lambert* and *Mancuso*, decisions in which persons were required to register because of their status, knowledge of the law is not a requirement of due process. The Supreme Court has indicated that dangerous or deleterious devices or products are the proper subject of regulatory measures adopted in the exercise of a state's "police power"—e. g., *United States v. International Minerals & Chemicals Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (corrosive liquids); *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (grenades); *United States v. Balint, supra* (narcotics); and *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (adulterated and misbranded drugs). These cases are premised on the theory that where dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with them must be presumed to be aware of the regulation. *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 64–65, 30 S.Ct. 663, 54 L.Ed. 930 (1910). That is to say,

> [T]here are fields in which the dangers are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of *mens rea* or its equivalent. [*State v. Hatch*, 64 N.J. 179, 184, 313 A.2d 797, 799 (1973).]

*See United States v. Freed, supra; Shevlin-Carpenter Co. v. Minnesota, supra.* Gun control is clearly such a field.

### C.

 Appellants further claim that § 6–1816(a) of the Firearms Act, which provides that firearms brought into the District must be immediately registered, imposes an unconstitutional burden on interstate com-

---

**25.** The Firearms Act provides that

Any person who violates any provision of this chapter shall upon conviction for the first time be fined not more than $300 or be

imprisoned for not more than ten (10) days, or both. . . . [D.C.Code 1978 Supp., § 6–1876.]

merce. They contend that under § 6–1816(a), a manufacturer or distributor of firearms outside the District of Columbia shipping guns through the District is required to register each individual firearm and pay all registration fees. However, this section of the Act is designed to require those obtaining firearms in the District of Columbia or nonresidents who move into the District with registerable firearms to promptly register them. The phrase "brought into the District" in § 6–1816(a) does not refer to firearms packaged in their original shipping containers that are transported in interstate commerce in a *bona fide* shipment. Thus, the Firearms Act does not totally exclude lawful articles of interstate commerce, as was the case in *Schollenberger v. Pennsylvania*, 171 U.S. 1, 18 S.Ct. 757, 43 L.Ed. 49 (1898). And, to the extent that the Firearms Act requires that a shipper of firearms who remains in the District for a time period longer than that of one who makes merely a brief stop en route to another jurisdiction obtain a local dealer's license, the burden is slight. The interest served is a legitimate local concern and, therefore, not an unreasonable burden. *See Procter & Gamble Co. v. City of Chicago*, 509 F.2d 69 (7th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); *State v. Hatch, supra* at 801.

### D.

■■■■ We disagree also with the final premise advanced by appellant that the Firearms Act is unconstitutionally vague.[26] At the outset, we recognize that it is a well-settled rule that courts are under a general obligation to interpret statutes so as to support their constitutionality. *Screws v. United States*, 325 U.S. 91, 98, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *accord, District of Columbia v. Gueory*, D.C.App., 376 A.2d 834, 836 (1977). A statute is suffi-

ciently precise measured by applicable constitutional standards if its meaning is intelligible to the average person as measured by common understanding and practices. *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1946); *Kovacs v. Cooper*, 336 U.S. 77, 79, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *accord, District of Columbia v. Gueory, supra.* To be successful, then, appellants must show that the statute either forbids or requires the doing of an act in terms so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . ." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See also Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *United States v. Five Gambling Devices*, 346 U.S. 441, 453, 74 S.Ct. 190, 98 L.Ed. 179 (1953) (Black & Douglas, JJ., concurring). Since we perceive no violation of "[t]he underlying principle . . . that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed," *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *United States v. Petrillo, supra; cf. Connally v. General Construction Co., supra*, 269 U.S. at 391, 46 S.Ct. 126; *see also Colten v. Kentucky*, 407 U.S. 104, 110–11, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), appellants' vagueness challenge must fail.[27]

### IV

Appellants allege that the Firearms Act is antithetical to the District of Columbia Administrative Procedure Act (DCAPA), and argue that the court erred in refusing to rule on the merits of appellants' procedural argument under the DCAPA.

■■■■ A threshold contention is that the Act contains no reference to the hearing

---

**26.** In addition to their claim that the entire text of the Firearms Act is vague, appellants challenge the ambiguity of specific sections of the Act: D.C.Code 1978 Supp., §§ 6–1802(12), –1802(15), –1811(a), –1812, –1813(a)(7), –1816(b), and –1872.

**27.** The Technical Amendments Act has disposed of several of the vagueness claims. *See* note 3, *supra*. Others fall under the common understanding standard. In sum, the vagueness challenges to the Act have no merit.

required by the DCAPA in the case of a revocation or denial of a registration certificate for a dealer's license. *See* D.C.Code 1978 Supp., § 1–1509. The trial court reasoned that since no appellant claimed to have been denied a dealer's license or had been required to resort to a faulty administrative process in that regard, the challenge lacks the ripeness and immediacy necessary for judicial review. *See Davis v. Ichord,* 143 U.S.App.D.C. 183, 189, 442 F.2d 1207, 1213 (1970); *Lion Manufacturing Co. v. Kennedy,* 117 U.S.App.D.C. 367, 372–74, 330 F.2d 833, 838–40 (1964). We are of the opinion, however, that in light of the type of declaratory relief appellants seek (*see* Section I, *supra*), and the "actual controversy" existing before the trial court (*see Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co., supra* 312 U.S. at 273, 61 S.Ct. 510), appellants' challenge to the Firearms Act's registration procedures was properly before the trial court.

 In D.C.Code 1978 Supp., § 6–1879, the Firearms Act, expressly provides:

The provisions of the District of Columbia Administrative Procedure Act (D.C. Code, sec. 1–1501 et seq.) shall apply to each proceeding, decision, or other administrative action specified in this chapter, unless otherwise specifically provided.

Nowhere in the Firearms Act is it specifically provided that the DCAPA shall not apply. Moreover, both sections of the Firearms Act relied on by appellants refer to this court's direct review jurisdiction under the DCAPA (*see* §§ 6–1820(b) and –1846(b)), which jurisdiction can only be exercised at the conclusion of "contested case" procedures (D.C.Code 1973, § 1–1509). *See also* D.C.Pol.Reg. Arts. 50–55 (implementing regulations).

**28.** NDA provides armed and unarmed security services to clients in the Washington Metropolitan area.

**29.** Philips Equipment Company is a licensed firearms dealer in the sale of handguns to the general public.

## V.

 Appellant's final contention focuses on what they view as a misinterpretation of the effect of the Firearms Act on two corporate appellants—National Detective Agencies, Inc. (NDA)[28] and Philips Police Equipment Company.[29] Appellant NDA alleged that the Firearms Act would adversely affect its employment of commissioned special officers by prohibiting it from buying additional handguns for use by its employees; prohibiting its employees from carrying loaded, assembled handguns on the job; and by prohibiting it from loaning handguns to its employees. The trial court properly rejected these claims. It is clear that § 6–1811(a) of the Firearms Act specifically allows the organization to furnish properly registered firearms to special police officers during duty hours. In addition, § 6–1811(a)(1) allows the commissioned special police officers of an organization "which *arms* such employees with firearms during such employees' duty hours" to maintain their firearms in a loaded usable condition during duty hours.[30]

 As to appellant Philips, we reject the claim that under the Firearms Act, the company would be prohibited from selling handguns to qualified residents. Such sales would, however, be subject to the City Council's authority to regulate the conduct of dealers of any dangerous or deadly weapons, *see* D.C.Code 1973, § 47–2340, and the standards set forth in § 6–1852 of the Firearms Act.

## CONCLUSION

For all above reasons, we conclude that the Firearms Act is a valid exercise of the City Council's legislative authority under the Home Rule Act, and that it offends no constitutional protection of appellees. Accordingly, the judgment on appeal is

*Affirmed in part and reversed in part.*

**30.** The Technical Amendments Act disposes of the third argument.